UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE PETITION OF STUART MCKEEVER | ) ) ) ) Misc. Action No. 13-54 (RCL) ) ) |

MEMORANDUM OPINION & ORDER

Before the Court is petitioner's Motion for Release of Grand Jury Testimony and Records in the Matter of United States vs. John Joseph Frank a/k/a/ "John Kane" [1]. Upon consideration of the motion, the government's opposition [10] and reply thereto [13], and the applicable law, the Court will deny the motion, for the reasons set forth below.

I.   BACKGROUND

Stuart McKeever, an independent researcher and author, is seeking the release of grand jury testimony and records related to the indictment of John Joseph Frank in May 1957. Petitioner argues that both Federal Rule of Criminal Procedure 6(e) and the Court's "inherent supervisory authority" over grand juries empower the Court to order the requested disclosure.[1] He further raises the nine-factor balancing test articulated by the Second Circuit in *In re Petition of Craig,* 131 F.3d 99 (2d Cir.1997), as militating in favor of that disclosure. The government opposes the petition, arguing 1) the requested disclosure falls outside the exceptions to grand jury secrecy set forth in Federal Rule of Criminal Procedure 6(e), 2) the

---

[1] The Court observes that the petitioner has cited to a non-existent subsection of the Federal Rules of Criminal Procedure, § 6(e)(3)(c)(i), as the basis of his rule-based argument. The petitioner also curiously did not incorporate paragraphs 18 or 19 of his complaint into his argument concerning the Court's inherent authority. Nevertheless, this Court construes liberally motions filed by *pro se* litigants, and will accordingly do so here. *See Bowman v. Iddon,* 848 F.3d 1034, 1039 (D.C. Cir. 2017).

1

*Craig* court's analysis is contrary to Supreme Court precedent, and 3) that, in any event, the Frank case lacks the historical significance that weighed in favor of disclosure in other cases.

The material at issue concerns former law enforcement agent and attorney John Joseph Frank, allegedly also known as "John Kane." According to news reports, Frank graduated from Georgetown University and Georgetown University Law Center, spent nearly eight years as a Special Agent of the Federal Bureau of Investigation in the 1940s, a few more years as a lawyer for the Central Intelligence Agency, and then left government service for the private practice of law. [13-4][2]

On May 13, 1957, a federal grand jury in the District of Columbia indicted Frank for failure to register as a foreign agent under the Foreign Agents Registration Act of 1938 (FARA), June 8, 1938, ch. 327, 52 Stat. 631 (22 §§ 611 to 621), accusing Frank of acting on behalf of the regime of Dominican dictator Rafael Trujillo. The grand jury that indicted Frank was reportedly investigating the disappearances of Jesus Maria de Galindez, a Columbia University professor critical of the Trujillo regime, and Gerald Murphy, an American pilot suspected of having something to do with Galindez's disappearance. Galindez was last seen in New York City on March 12, 1956.

Petitioner has been researching the Galindez disappearance and surrounding events since 1980. Motion for Release of Grand Jury Testimony and Records at *2 [1]. His research has led him to conclude that Frank masterminded the Galindez kidnapping on orders from Trujillo, using Murphy to covertly fly Galindez from New York to the Dominican Republic to

---

[2] Petitioner's reply [13] includes 19 pages of uncited narrative, except to the petitioner's own prior work, explaining the historical significance of the Galindez matter. The Court makes no findings as to the accuracy or truth of either the narrative or the attached press reports.

2

be tortured and murdered by Dominican agents. *Id.* at *3. Murphy himself was then killed in the Dominican Republic in December 1956, petitioner claims, by Dominican agents to keep him from talking about the Galindez kidnapping.

Frank was never charged with having a role in the Galindez or Murphy disappearances, but was convicted by a jury on the FARA charges. That conviction was reversed by the Court of Appeals, however, because prosecutors made prejudicial statements during trial linking Frank to the "Galindez-Murphy affair." *Frank v. U.S.*, 262 F.2d 695 (D.C. Cir. 1958).

## II. **DISCUSSION**

In *In re Petition of Stanly Kutler*, 800 F.Supp.2d 42 (D.D.C., 2011), this Court authorized the disclosure of President Richard Nixon's grand jury testimony and associated materials of the Watergate Special Prosecution Force (WSPF), subject to the review procedures of the National Archives and Records Administration (NARA). Mr. McKeever asks the Court to find that his requested materials also merit disclosure under the standards articulated in *Kutler*. For its part, the government, which did not appeal the *Kutler* ruling, argues here that this Court was wrong to grant disclosure in the former case, that the Second Circuit was wrong in its articulation of the "special circumstances" doctrine that this Court applied, and that, regardless of the above, disclosure outside of Rule 6(e) would be inappropriate here.

### A. *Standard for Disclosure of Grand Jury Records*

There is a tradition in the United States—one that is "older than our Nation itself"—that proceedings before a grand jury should remain secret. *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 295, 399 (1959)). This

3

tradition is codified in Federal Rule of Criminal Procedure 6(e). *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 n.9 (1979). The rule of secrecy is justified by a number of law enforcement and criminal justice objectives, including:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)).

But the rule of grand jury secrecy is not without exceptions. These exceptions, which "have developed historically alongside the secrecy tradition," are codified in Rule 6(e)(3). *In re Petition of Craig*, 131 F.3d 99, 102 (2d Cir.1997). The exceptions recognized in Rule 6(e)(3) were codified to promote the efficiency of law enforcement and the criminal justice process after a series of overly restrictive judicial rulings that preceded the rule's enactment. *See* S. Rep. 95-354, 1977 U.S.C.C.A.N. 527; *Carlson*, 837 F.3d at 765 (according the Committee notes "some weight"). The enacted Rule 6(e) did not "define" prosecutors' abilities to disclose grand jury material, but merely "facilitate[d]" it in light of some rulings to the contrary. S. Rep. 95-354, 1977 U.S.C.C.A.N. at 529-32.

In addition to those exceptions articulated in Rule 6(e)(3), courts have recognized there may be "special circumstances in which release of grand jury records is appropriate even outside the boundaries of the rule." *Craig*, 131 F.3d at 102 (quoting Biaggi, 478 F.2d at 494

4

(supplemental opinion) (internal quotations omitted) (holding that Rule 6(e) did not bar the public disclosure of grand jury minutes, even where no Rule 6(e) exception applied, when sought by the grand jury witness himself)). In *Craig*, the Second Circuit embraced the "special circumstances" exception first recognized by Chief Judge Friendly in Biaggi, holding that "permitting departures from Rule 6(e) is fully consonant with the role of the supervising court and will not unravel the foundations of secrecy upon which the grand jury is premised." *Id.* at 103.

The *Craig* court explained that the special circumstances exception "is consistent with the origins of Rule 6(e), which reflects rather than creates the relationship between federal courts and grand juries." *Id.* (citing *Pittsburgh Plate Glass Co.*, 360 U.S. at 399, 79 S.Ct. 1237 (explaining that "Rule 6(e) is but declaratory" of the principle that the disclosure of grand jury materials is "committed to the discretion of the trial judge")). Judge Calabresi, writing for the court, noted that the Second Circuit was not alone in this view. *See id.* at 103 & nn.3–4 (citing *In re Hastings*, 735 F.2d 1261, 1268–69 (11th Cir.1984) (describing courts' "inherent power" to authorize the disclosure of grand jury records outside of Rule 6(e))). Since *Craig*, the Seventh Circuit has likewise declared that circuit's recognition of district courts' inherent authority to disclose grand jury information outside of the strictures of Rule 6(e). *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016).

In granting the Kutler petition to unseal President Nixon's grand jury testimony, this Court agreed that "special circumstances" may justify the release of grand jury materials outside the bounds of Rule 6(e). The Court found that the special circumstances exception, first applied in the Second Circuit, is well-grounded in district courts' inherent supervisory authority to order the release of grand jury materials. Moreover, the exception, by its very

nature, applies only in exceptional circumstances, requiring a nuanced and fact-intensive assessment of whether disclosure is justified.

The government's argument that no disclosure of grand jury information is permissible outside the strictures of Rule 6(e) remains unconvincing. The government relies heavily on the Supreme Court's instruction that a district court's inherent power "does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. United States*, 517 U.S. 416, 426, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (holding that a district court had no authority to grant a motion for judgment of acquittal filed one day outside of Rule 29(c)'s time limit); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (holding that a district court could not invoke its supervisory power to circumvent Rule 52(a)'s harmless error standard). But that principle is inapplicable here, where the relevant rules are silent as to other circumstances that may merit disclosure. *See also Carlson*, 837 F.3d at 755 ("We find nothing in the text of Rule 6(e) (or the criminal rules as a whole) that supports the government's exclusivity theory, and we find much to indicate that it is wrong.").

Indeed, *Carlisle* dealt with a district court that had "contradicted the plain language" of Rule 29(c) by "effectively annull[ing]" its specified time limit. *Carlisle*, 517 U.S. at 426, 116 S.Ct. 1460. In contrast, courts have historically exercised their supervisory power to develop appropriate exceptions to the rule of grand jury secrecy. *See In re Hastings,* 735 F.2d 1261, 1268–69 (11th Cir.1984) (tracing the history of how courts' inherent power has shaped Rule 6(e)); *In re Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219, 1229 (D.D.C.1974) (citing *Biaggi* for the proposition that Rule 6(e) "remains subject to the law or traditional policies that gave it birth"). Nothing in *Carlisle* precludes the exercise of that power

6

in "exceptional circumstances consonant with the rule's policy and spirit." *Hastings*, 735 F.2d at 1269.

Contrary to the facts of *Carlisle*, the Court's decision today is consistent with, or at least certainly does not contradict the text and history of the rule.[3] *See also Carlson.* at 764-65. Further, the fact remains that it would make little sense for a rule of criminal procedure to include provisions for permissive disclosure for purposes other than contemporary law enforcement and criminal justice functions that constitute at least four of the five interests the tradition of grand jury secrecy is meant to protect.[4] *Cf. Procter & Gamble*, 356 U.S. at 681–82 n. 6. *See also* S. Rep. 95-354, 1977 U.S.C.C.A.N. at 531 (indicating that the restrictions on disclosure enumerated in Rule 6(e) sought "to allay the concerns of those" who feared the possibility of prosecutorial misconduct via improper disclosures of grand jury investigations, *not* abuses of judicial discretion).

Instead, it is left to the district court's sound discretion, as it was prior to 1977, to hear petitions for disclosure on their merits, and grant them, in whole or in part, if and when it is appropriate to do so. The factors enumerated in *In re Petition of Craig*, 131 F.3d 99 (2d Cir.

---

[3] It is noteworthy that the inherent supervisory power of the Court over a grand jury is also implicitly recognized in more than a dozen provisions of Rule 6. See, e.g., §§ (a)(1) (summoning grand juries), (a)(2) (providing for judicial discretion as to alternate grand jurors); (c) (appointing a foreperson); (e)(1) (determining control of records of proceedings); (e)(3)(B) (oversight of Rule 6(e)(3)(A)(ii) disclosures); (e)(3)(D)(ii) (oversight of Rule 6(e)(3)(D) disclosures); (e)(3)(E) (discretion to authorize contemporary disclosures for ongoing proceedings or law enforcement purposes); (e)(3)(F) (oversight of Rule 6(e)(3)(E)(i) disclosures); (e)(5) (closing hearings "to the extent necessary" to prevent disclosure of a matter occurring (in the present tense) before a grand jury); (e)(7) (discretion concerning contempt findings); (g) (discharging grand juries); (h) (discretion to excuse grand jurors). In addition, the history of the Notes of the Advisory Committee on Rules are replete with acknowledgements of courts' discretion concerning disclosure of grand jury information in a variety of circumstances.

[4] Indeed, although there is no First Amendment right of access to grand jury proceedings, *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499 (D.C. Cir. 1998), it is antithetical to our system of government to say that some class of public records is, forever and always, off-limits even from consideration for public release, even after the underlying practical needs for secrecy in the records has long since lapsed. In a constitutional democracy that values openness and transparency in government records, no matter how sensitive, *Cf.* 5 U.S.C. § 552; Exec. Order. 13526, § 3.1(a), it is imperative that the Court look to the underlying purpose of any rule calling for nearly unqualified secrecy of a class of records for perpetuity.

1997), appropriately guide a district court in the exercise of its discretion to unseal grand jury records. These factors include:

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material—either permissibly or impermissibly—has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*Id.* at 106. *See also Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016).

### B. *Merits of the Petition*

The *Craig* factors enumerated above properly balance special circumstances that might justify disclosure against the need to maintain grand jury secrecy. In *Kutler*, this Court found the relevant factors to weigh in favor of unsealing President Nixon's testimony and associated WSPF materials. Specifically, the Court held that the undisputed historical interest in the narrowly-tailored request for records outweighed the need to maintain the secrecy of those records. Here, too, the Court will consider those factors in determining whether petitioner has demonstrated that the disclosure of grand jury records related to John Frank is justified.

The court finds several of the *Craig* factors would favor disclosure in this case. Mr. McKeever himself is a bona fide author who has been researching this case since 1980, and has published a book on it. Disclosure is being sought for reasons in accord with that purpose – furthering Mr. McKeever's research on the topic. Nearly sixty years have passed since the grand jury held its hearings, and the principals and witnesses who might be affected by

8

disclosure of the records are likely deceased.

The government argues, however, that even under *Craig*'s special circumstances test, the petition fails to meet that test because the historical value of the Frank case does not rise to the level of meriting release. Although not by itself determinative, "the government's position should be paid considerable heed." *In re Craig*, 131 F.3d at 106. The government's opposition, however, would best be framed in the context of the historic reasons for the tradition of grand jury secrecy. *Cf. Procter & Gamble*, 356 U.S. at 681–82 n. 6. Instead, the government's main focus is on the historic value of the requested records, or lack thereof. *See, e.g.*, Memorandum in Opposition at *24 [10] (arguing there is "no basis to believe that the records here are of exceptional historic importance.").

Any qualitative judgment about what events are properly considered "historic" necessarily includes a great degree of subjectivity. The Court agrees with the government to the extent that it is objectively true that the Galindez kidnapping does not carry the lasting impact on the structure of our civics and culture that the Watergate scandal does. But it also is simply not credible to argue that there is not historic value in studying the details of a case involving an individual who served as a federal agent in what is arguably the nation's premier law enforcement agency, then an attorney at what is arguably the nation's premier intelligence agency, who was subsequently employed by and took orders from an unfriendly foreign government, possibly to include the abduction from the United States and murder of a refugee. A case involving lethal operations by United States citizens acting as foreign agents inside the United States is not merely "interesting." *Id.* at **22, 23.[5]

---

[5] The Court notes that, if there is indeed a credible factual basis for petitioner's allegation that then-active U.S. government agents were also involved, *see* [1] at **6-7; [13] at **14-15, 29, that would tend to weigh even more heavily in favor of disclosure. Mere speculation, however, can be accorded no weight.

9

Nevertheless, Mr. McKeever's petition seeks a far broader range of records than what was sought in *Kutler*, and the sheer breadth of Mr. McKeever's petition renders disclosure outside of Rule 6(e) inappropriate. *See also In re Shepard*, 800 F.Supp.2d 37 (D.D.C. 2011). Rather than the grand jury testimony of a single witness, Mr. McKeever seeks the release of unspecified, and thus presumptively all, "testimony and records in the Frank case . . ." Motion for Release of Grand Jury Testimony and Records at ** 1, 4 [1]. "There are obvious differences between releasing one witness's testimony, the full transcript, or merely the minutes of the proceeding." *Craig*, 131 F.3d at 106. Indeed, the government represents that such disclosure would amount to "thousands of pages of documents and numerous witnesses." Memorandum in Opposition *2 [10]. Thus, the fourth *Craig* factor, which addresses the scope of information sought, weighs heavily against disclosure.

Furthermore, the sheer volume of material requested implicates at least one of the secrecy concerns recognized by the Supreme Court – that of protecting the privacy of individuals who may have been subjects of the grand jury's investigation, but were never indicted. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681– 82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) (noting that, among the goals achieved by grand jury secrecy is protecting an innocent accused who has been exonerated "from disclosure of the fact that he has been under investigation") (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir.1954)). *See also In re Nichter*, 949 F.Supp.2d 205, 213-14 (D.D.C. 2013). Although most privacy protections do not extend to deceased individuals, the involvement of persons in criminal proceedings who themselves are never indicted or tried nevertheless is presumed to merit continued secrecy, with only the rarest of exceptions, as recognized in *Kutler*. Additionally, Mr. McKeever's blanket request for all the records associated with the case

makes it impossible for the Court to assess the status of the families of the principals or witnesses involved in the Frank investigation

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Mr. McKeever's Petition [1] is DENIED.

**SO ORDERED** this 22nd day of May, 2017

ROYCE C. LAMBERTH
United States District Court